**REMINGTON RAND CORP. (by change of name The Kilbarr Corporation), Plaintiff,**

v.

**AMSTERDAM–ROTTERDAM BANK, N.V., Pierson, Heldring & Pierson, N.V., Business Systems Inc. Int'l N.V. a/k/a/ BSI, N.V., Ismat A. Khatib, Abdul Ghani El–Ajou, Mishary Khalid Al Zaid Al–Khalid, Abdul Ghani El–Ajou Corp., and Al–Jeel Trading Co., Defendants.**

No. 87 Civ. 8288 (RO).

United States District Court,
S.D. New York.

May 22, 1991.

Drinker, Biddle & Reath, New York City (J. Portis Hicks, of counsel), Paul & Paul, Philadelphia, Pa. (James C. McConnon, Joseph A. Tessari and Joseph E. Chovanes, of counsel), and Drinker, Biddle & Reath, Philadelphia, Pa. (Lewis H. Van Dusen, Jr., James C. Ingram and Paul R. Fitzmaurice, of counsel), for plaintiff.

Sullivan & Cromwell, New York City (Bruce E. Clark, William M. Dallas, Jr., Joseph E. Neuhaus and William E. Schroeder, of counsel), and Schnader, Harrison, Segal & Lewis, Philadelphia, Pa. (Arlin Adams and Ralph Wellington, of counsel), for defendants Amsterdam–Rotterdam Bank N.V. and Pierson, Heldring & Pierson N.V.

Menaker & Herrmann, New York City (Richard G. Menaker and Loretta H. Murray, of counsel), for defendants Abdul Ghani El–Ajou and Abdul Ghani El–Ajou Corp.

OPINION AND ORDER

OWEN, District Judge:

Plaintiff Remington Rand Corporation moves, pursuant to Rule 42(b), for a separate trial on the issue of whether or not defendants in this case are bound by the award in a separate action in New Jersey District Court involving this plaintiff and different defendants, plaintiff claiming them to be agents of these defendants.

The defendants here object to the separate trial of this issue.

This case has its origins in typewriter manufacturing technology that plaintiff developed and licensed to its Dutch subsidiary, Remington Rand, B.V. The Dutch entity became insolvent in 1981 and, under the auspices of a Dutch bankruptcy proceedings, its assets were sold to a corporation known as BSI in a private sale that, plaintiff complains, also involved the unlawful sale of plaintiff's trade secrets. Alleging misappropriation of those trade secrets, plaintiff sued BSI in 1981 in New Jersey District Court. Eight years later, and after three appeals to the Third Circuit, plaintiff is in possession of a judgment of $221,409,481 against BSI, which judgment was affirmed by the Third Circuit, 869 F.2d 589, but BSI is now in bankruptcy.

By this action, plaintiff renews its misappropriation claim against two clusters of parties which it claims participated in the misappropriation and controlled BSI from the time it took over Remington's assets throughout the course of the New Jersey litigation. The first set of defendants are certain Dutch banks who had loaned money to Remington Rand, B.V. in 1978 and subsequently extended Dfl. 16.5 million in credit to BSI when BSI took over Remington's operations in 1981. Those banks are the Amsterdam–Rotterdam Bank, N.V., and Pierson, Heldring & Pierson, N.V. The second set of defendants is comprised of certain Arab individuals, one of whom, Mr. El–Ajou, was BSI's President during the New Jersey litigation. Plaintiff claims that these defendants bear liability for Remington's damages from the now-established misappropriation by BSI because they conspired in 1981 to misappropriate the trade secrets and formed the BSI companies to carry out the misappropriation.

By this motion, plaintiff seeks a separate trial on the issue of whether these defendants are bound by the New Jersey litigation, and plaintiff proposes to prove: 1) that the defendants participated in the taking and use of plaintiff's technology; 2) that the defendants' interests were represented by BSI in the New Jersey case; and 3) that the defendants participated in the control of the New Jersey litigation directly and through their control of the BSI corporations. Defendants deny these charges.

Plaintiff submits different theories for finding the two sets of defendants bound by the New Jersey action. Since the Arab defendants were officers or shareholders of BSI, plaintiff argues that those individuals' self-dealing with BSI justifies piercing the corporate veil as to them. This theory would seem to be supported by Judge Hill's finding that there was "blatant manipulation of the American [BSI] company for the benefit of BSI, N.V. and the controlling Arab groups," including the backdating of loan documents and other conduct which "does not normally speak of honest or good faith intentions...." With respect to the Banks, plaintiff states that the Banks, among other things, set up BSI in order to have a vehicle for the sale of the misappropriated trade secrets, provided BSI with all of the money to misappropriate Remington's trade secrets under the loan agreement, received all of the money from the sale of BSI typewriters and provided money to finance the New Jersey litigation.

Several documents are before me which support plaintiff's contentions regarding the Bank's control of BSI generally as well as specifically in the New Jersey litigation. For example, the purchase agreement by which BSI acquired Remington's Dutch plant was signed by representatives of both sets of defendants on June 4, 1981. Moreover, Exhibit C indicates that ·the Bank preferred to issue BSI a subordinated loan, rather than a guaranteed loan so that the Bank could retain greater control over BSI. Exhibit L represents an agreement between BSI, its shareholders and the Banks, whereby it was agreed that BSI "will cooperate to continue the present law suit against Remington." The agreement also provided for the payment of BSI's attorney's litigation fees, and it provided that "all parties concerned can reconsider their positions if Remington wins the case." Exhibits M and N make plain the Banks' interest in the litigation, and their input in steering it along through, among

other things, negotiating for the payment of BSI's legal fees.

The Banks' position is set forth in Exhibit 19 to plaintiff's reply memorandum in support of this motion, which is an affidavit that Eric Van Der Lande, a senior account manager at defendant Bank Pierson, Heldring & Pierson, submitted to Judge Bissell in 1985. Therein, Mr. Van Der Lande stated, at paragraph 20:

> The banks have never controlled, or attempted to control BSI, B.V. No representative of the banks has ever served as either an officer or director of BSI, B.V. We have only loaned funds to BSI, B.V. The company accordingly has an obligation to pay the money, plus interest, back to the banks. Our only decision regarding BSI, B.V. has been whether to continue the credit line or withdraw that credit, putting the company out of business. Our potential claims for payments against BSI, B.V. are precisely that—*against* BSI, B.V. Moreover, our interests are adverse to those of the shareholders of BSI, B.V.

Thus, the Banks argue that their interest in the New Jersey litigation and their authorization of counsel fees for BSI were guided by the desire to ensure that BSI was financially able to repay its loans, which could only be accomplished if BSI succeeded in the New Jersey litigation and was able to continue selling the typewriters.

Rule 42(b) provides that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim...." Upon a thorough review of all of the documents and exhibits submitted on this motion by both parties, I am satisfied that judicial economy will be served by the bifurcation of the issue of whether the defendants are bound by the New Jersey litigation. There is enough before me to indicate that plaintiff may prevail on this issue, and resolution of the issue in favor of the plaintiff would obviate the need to litigate many other issues.

Accordingly, plaintiff's motion is granted. This ruling does not preclude the mak-

ing of any dispositive motions prior to trial by either party.

So ordered.